**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KWADWO AMOAH

      Plaintiff,

    v.                          Case No.

PRETIUM PACKAGING OLCOTT
PLASTICS

      Defendant.                Plaintiff Demands Trial By Jury

## COMPLAINT

Plaintiff KWADWO AMOAH, ("Plaintiff" or "Amoah") by and through his undersigned

attorneys, complains against Defendant PRETIUM PACKAGING OLCOTT PLASTICS

("Defendant," "Pretium Packaging," or "The Company") and states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to redress interference with Plaintiff's exercise of rights

under the Family and Medical Leave Act of 1993, as amended ("FMLA"), 29 U.S.C. § 2601, *et*

*seq*., (Count I); violation of Plaintiff's rights under the Family and Medical Leave Act of 1993;

(COUNT II), and retaliation for Plaintiff's exercise of rights under the Family and Medical

Leave Act of 1993, as amended ("FMLA"), 29 U.S.C. § 2601, *et seq*., (Count III).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 29

U.S.C. § 2617, 42 U.S.C. § 1983, and 28 U.S.C. § 1343.

3. Further, venue is proper in this judicial district in accordance with 28 U.S.C. §

1391(b) and (c), as Plaintiff and Defendant either reside in this district or have their principal

place of business in this district, and all events giving rise to Plaintiff's claims occurred within

this district.

**PARTIES**

4.     Plaintiff KWADWO AMOAH ("Plaintiff" or "Amoah") is a citizen of the United States who resides in Will County, Illinois.

5.     Amoah has been employed by PRETIUM PACKAGING OLCOTT PLASTICS since 2011.

6.     At all relevant times, Amoah was an "employee," as defined in the FMLA, 29 U.S.C. § 2611(2)(A).

7.     At all relevant times, Amoah was an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2), in that he was employed for at least twelve months and worked at least 1,250 hours for the Pretium Packaging during the twelve-month period preceding his leave requests.

8.     Defendant PRETIUM PACKAGING OLCOTT PLASTICS is a corporation organized under the laws of the State of Illinois and conducting business in the State of Illinois.

9.     At all relevant times, Defendant was the "employer" of Plaintiff within the meaning of 29 U.S.C. § 2611(4) in that Defendant Pretium Packaging is a "person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

10.     On February 11, 2011, Plaintiff began working for Olcott Plastics as a Process Tech.

11.     Plaintiff had a positive employment evaluations throughout his employment.

12.     Plaintiff applied for intermittent FMLA leave in 2021 for his serious health conditions with episodic flare-ups. Plaintiff's family medicine doctor completed the FMLA

2

certification listing his health conditions of plantar fasciitis, leg pain, and chronic migraine. In November 2021, Plaintiff's FMLA was approved for 2021-2022.

13. Plaintiff filed for FMLA in April 2022. Plaintiff's family medicine doctor completed the Certification form in the same manner as was approved in 2021.

14. On May 4, 2022, Plaintiff learned that his FMLA was denied because Pretium alleged the forms were not filled out correctly. Plaintiff did not receive a written denial letter.

15. On May 5, 2022, Plaintiff contacted his doctor and she agreed to resubmit the forms.

16. Plaintiff's doctor recertified his FMLA leave on May 9, 2022. However, HR still denied his FMLA. HR unilaterally decided that the duration of episodes certified by the doctor needed to be changed.

17. On May 18, 2022, Plaintiff's doctor submitted separate certifications for each condition.

18. On May 23, 2022, Plaintiff's FMLA was denied again. Plaintiff did not receive a written denial letter.

19. On May 24, 2022, Plaintiff went to the front office to speak with Suji Krish and Plant Manager, Damien Probus, to make a formal complaint about how his FMLA paperwork was handled. In the meeting, Ms. Krish stated, that they heard that he was applying for FMLA leave because he had another job. Plaintiff denied that he had another job.

20. On May 25, 2022, Plaintiff's doctor resubmitted his FMLA certification. HR denied his FMLA again on May 26, 2022, alleging that the certification forms were incomplete and requiring Plaintiff's doctors to speak to HR by telephone before they would approve his FMLA, despite the fact that HIPPA and FMLA regulations prohibit the employer from contacting the Plaintiff's healthcare providers directly.

21. Plaintiff did not hear anything else from HR regarding his FMLA application after June 7, 2022.

22. In June 2022, Plaintiff filed a complaint with the Department of Labor. The investigator found that Defendant was violating Plaintiff's FMLA rights.

23. Plaintiff learned on August 14, 2022, that despite messages back and forth, HR had never spoke with Plaintiff's doctor and still denied his FMLA.

24. As a result of Defendant's changing FMLA certification requirements and failure to approve Plaintiff's FMLA application, Plaintiff had to take sick days for his serious medical conditions. Plaintiff was issued disciplinary write-ups for calling in sick, even though Defendant knew that Plaintiff needed FMLA for his serious medical conditions.

25. In September 2022, Plaintiff complained to Geary Larson that his title was incorrect on the employee directory. He was listed as "Set Up Process Technician" instead of "Lead Process Technician." Defendant did not do anything to resolve Plaintiff's complaint. Plaintiff raised the issue with Defendant again in January 2023, April 2023, and June 2023.

26. In October 2022, Plaintiff filed a complaint with Department of Labor relating to the denial of his FMLA. The Department of Labor found that Pretium Packaging Olcott had not maintained accurate documentation. As a result, all of Plaintiff's attendance related write-ups were removed from his record.

27. In February 2023, Plaintiff complained to HR that a colleague in the toolroom was using racial comments.

28. In or about March 2023, Plaintiff applied for a supervisor position. He was denied the position despite his years of service and qualifications.

29. In 2023, HR launched an unwarranted investigation into all of Kwadwo's absences, and it was determined that he did not abuse his FMLA leave time.

30. On August 30, 2023, Plaintiff again addressed the issue of his title being incorrectly listed on the employee directory. Because his title was incorrect, he was denied opportunities to supervise the shifts.

31. In January 2024, Plaintiff complained to Paula Robinson, the Regional Director of HR for the West Region, that the Company was not adhering to FMLA guidelines.

32. On February 2, 2024, Brian Johnson told Plaintiff that he did not qualify for a merit raise "due to the amount of time missed from work."

33. On June 7, 2024, Plaintiff complained to Brian Johnson and Eva Rojas about discrimination, bias, and retaliation for taking FMLA.

34. On June 19, 2024, Plaintiff was issued a Final Written Warning regarding attendance violations from August 4, 2023 through June 7, 2024.

35. On August 15, 2024, Plaintiff applied for FMLA due to his chronic conditions.

36. On August 21, 2024, Pretium informed Plaintiff that his form was insufficient because his doctor did not include his email address on the application form.

37. On August 30, 2024, Plaintiff resubmitted the updated FMLA certification form with the requested information.

38. On October 4, 2024, Plaintiff broke his finger pinching it between a roll of liner and the surface of a roll holder. Plaintiff filed a worker's compensation claim due to the workplace injury.

39. Plaintiff was off work for six weeks due to his finger injury. Pretium insisted Plaintiff take FMLA leave for the time he was off work for his workplace injury.

40. After more than two months passed without a word about the status of the recertification, Plaintiff reached out to HR multiple times. Finally, on October 31, 2024, Plaintiff was told that he was recertified for the plantar fasciitis but not the chronic migraines because the

doctor did not put in the date that he was diagnosed with the migraines. Pretium had this information from his previous FMLA certifications and knew that he had been suffering from migraines for over a decade.

41. Plaintiff returned to work from his workplace injury on December 3, 2024.

42. On December 4, 2024, Plaintiff was terminated "due to violation of the company's attendance policy."

43. Plaintiff was eligible for FMLA leave each year in that he worked at least 1,250 hours for Pretium Packaging during the twelve-month period preceding his leave requests.

44. Plaintiff was subjected to unwarranted discipline relating to absences which should have been protected by the FMLA.

## COUNT I

### (FMLA Interference)

45. Plaintiff repeats and realleges the foregoing paragraphs against Defendant as though fully set out herein.

46. Plaintiff was, and continues to be, an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2), in that he was employed for at least twelve months and worked at least 1,250 hours for Defendant during each twelve-month period preceding his leave requests.

47. Plaintiff was required to be absent from work due to his serious health conditions.

48. Plaintiff was entitled to FMLA leave for treatment of his serious health conditions.

49. Plaintiff applied for intermittent FMLA leave.

50. Plaintiff provided Defendant with the medical certification regarding his serious health conditions.

6

51.     Defendant interfered with, restrained, or denied Plaintiff's exercise of his FMLA rights by changing the requirements for the medical certification, requiring unnecessary information, and hyper strict compliance with the medical forms, subjecting Plaintiff to disciplinary action based on his absences, denying Plaintiff a pay raise, and termination of his employment.

52.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of income, loss of other employee benefits, costs, fees, expenses, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.  All wages, benefits, or other compensation lost by Plaintiff by reason of the Family Medical Leave Act violations, including but not limited to back pay, front pay, and pre-judgment interest;

B.  Actual monetary losses sustained by Plaintiff as a direct result of Defendant's Family Medical Leave Act violations;

C.  Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A), at the prevailing rate from the date Plaintiff was retaliated against to the date of judgment, in an additional amount equal to the award of damages, including interest;

D.  Equitable relief including restoration of job assignments and promotions; ;

E.  A permanent injunction enjoining Defendants from engaging in the practices complained of herein;

F.  A permanent injunction requiring that Defendant adopt employment practices and policies in accord and conformity with the requirements of the Family Medical Leave Act;

G.  A declaratory judgment that Defendant's actions violate the Family Medical Leave Act;

H.  The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

I.  An award of reasonable attorneys' fees, costs, and litigation expenses pursuant to 29 U.S.C. § 2617(a)(3); and

J.  Any other relief tailored to the harm suffered.

## COUNT II

### (FMLA Retaliation)

53.  Plaintiff repeats and realleges the foregoing paragraphs against Defendant as though fully set out herein.

54.  Plaintiff needed intermittent FMLA leave due to his serious health conditions.

55.  Plaintiff applied for intermittent FMLA leave.

56.  Plaintiff provided Defendant with medical certifications from his health care provider regarding his serious health condition.

57.  Defendant retaliated against Plaintiff for his exercise of his FMLA rights by changing the requirements for the medical certification, requiring unnecessary information, and hyper strict compliance with the medical forms, subjecting Plaintiff to disciplinary action based on his absences, denying Plaintiff a pay raise, and termination of his employment.

58.  Defendant's actions constitute unlawful retaliation against Plaintiff for his exercise of his rights under the FMLA, in violation of the FMLA, 29 U.S.C. § 2615(a).

59.  As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer loss of income, loss of other employee benefits, costs, fees, expenses, and damage to his reputation.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.  All wages, benefits, or other compensation lost by Plaintiff by reason of the Family Medical Leave Act violations, including but not limited to back pay, front pay, and pre-judgment interest;

B.  Actual monetary losses sustained by Plaintiff as a direct result of Defendants' Family Medical Leave Act violations;

C.  Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A), at the prevailing rate from the date Plaintiff was retaliated against to the date of judgment, in an additional amount equal to the award of damages, including interest;

D.  Equitable relief including restoration of job assignments and promotions; ;

E.  A permanent injunction enjoining Defendant from engaging in the practices complained of herein;

F.  A permanent injunction requiring that Defendant adopt employment practices and policies in accord and conformity with the requirements of the Family Medical Leave Act;

G.  A declaratory judgment that Defendant's actions violate the Family Medical Leave Act;

H.  The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

I.  An award of reasonable attorneys' fees, costs, and litigation expenses pursuant to 29 U.S.C. § 2617(a)(3); and

J.  Any other relief tailored to the harm suffered.

## COUNT III

### (RETALIATORY DISCHARGE)

60.  Plaintiff repeats and realleges the foregoing paragraphs against Defendant as though fully set out herein.

61.  At all times herein relevant it was the duty of all employers employing persons in Illinois to refrain from terminating any of those persons for reasons that violated a clear mandate of public policy.

62.  Plaintiff exercised his rights under the Workers' Compensation Act.

63.  Defendant's termination of Plaintiff violates Illinois law, which prohibits employers for discharging employees in retaliation for exercising their rights under the Workers' Compensation Act.

64.     As a result of Defendant's unlawful discharge of Plaintiff's employment, Plaintiff has suffered substantial losses, including, but not limited to, lost wages and benefits, mental and emotional anguish, embarrassment, humiliation, and damage to her reputation.

**WHEREFORE,** Plaintiff prays for judgment against Defendant in an amount in excess of $75,000 and such other relief as the Court may deem just or equitable, including but not limited to compensatory damages, backpay, front pay, pre-judgment interest, lost future wages, future pecuniary damages, reasonable attorneys' fees, costs, litigation expenses as a result of Defendants' unlawful conduct, and award Plaintiff any and all other relief to which he may be entitled.

Respectfully submitted,

KWADWO AMOAH

*s/Heidi Karr Sleper*

One of Plaintiff's Attorneys

*Electronically filed on February 13, 2026*

Heidi Karr Sleper (#6287421)
Martin Stainthorp (#6339722)
Workplace Law Partners, PC
155 N. Michigan Avenue, Suite 719
Chicago, IL 60601
Phone: (312) 861-1800
hsleper@fishlawfirm.com
mstainthorp@fishlawfirm.com